In the Matter of AMERICAN SAVINGS BANK, Formerly Known as FRANKLIN SAVINGS BANK OF NEW YORK, Petitioner, v PHILIP R. MICHAEL, as Commissioner of Finance of the City of New York, et al., Respondents.

In the Matter of BOWERY SAVINGS BANK, Petitioner, v PHILIP R. MICHAEL, as Commissioner of Finance of the City of New York, et al., Respondents.

First Department, April 3, 1984

### APPEARANCES OF COUNSEL

*Thomas S. Howard* of counsel (*Douglas J. McClintock* and *Michael V. Kaprelian* with him on the brief; *Thacher,*

*Proffitt & Wood,* attorneys), for American Savings Bank, petitioner.

*Terence F. Gilheany* of counsel (*Arnold J. Zurcher, Jr., Wayne M. Grzecki* and *Rosemary C. Byrne* with him on the brief; *Cadwalader, Wickersham & Taft,* attorneys), for Bowery Savings Bank, petitioner.

*Gale Zareko* of counsel (*Stanley Buchsbaum* and *Maurice Ravage* with her on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

**OPINION OF THE COURT**

MILONAS, J.

In separate petitions brought pursuant to CPLR article 78, petitioners, American Savings Bank and the Bowery Savings Bank, seek to review and annul determinations by respondents, Commissioner of Finance of the City of New York and the Department of Finance of the City of New York, assessing certain tax deficiencies against them for the years 1973 through 1975 inclusive. The issue before us here involves the proper interpretation of the alternative minimum tax authorized under sections R46-37.5 (subd [b], par [2]), R46-37.51 (subd [b], par [2]) or R46-37.53 (subd [b], par [2]) of the Administrative Code of the City of New York.

The New York City business tax relating to banks and other financial institutions is imposed on net income. (Administrative Code, §§ R46-37.1, R46-37.5, subd [a].) The statute, however, provides for an alternative minimum tax based upon the interest or dividends credited to depositors or shareholders. The alternative minimum tax for savings bank and savings and loan associations in effect for 1973 was contained in section R46-37.5 (subd [b], par [2]) and stated that the amount to be paid: "For a savings bank and savings and loan association, one and forty-three one-hundredths per cent of the interest or dividends credited by it to depositors or shareholders during the taxable year, provided that, in determining such amount, each interest or dividend credit to a depositor or shareholder shall be deemed to be the interest or dividend actually credited or the interest or dividend which would have been credited if it had been computed and credited at the rate of three and one-half per cent per annum, whichever is less."

A new provision (Administrative Code, § R46-37.51) was adopted for 1974. It was identical to the earlier statute, except that the rate was increased from .0143 to .01716 of the tax base. For 1975, the tax rate was increased again, this time to .02574. (§ R46-37.53.) There is no dispute that petitioners were subject to the alternative minimum tax and filed their corporate tax returns accordingly. In fact, the only disagreement between the parties is the method in which "each interest or dividend credit" is to be computed.

Petitioners contend that the 3.5% maximum interest rate prescribed by statute is a simple, annual rate of interest. Therefore, the interest credited to accounts during the taxable year in question may not be included in the amount to which the 3.5% rate is applied. Petitioners assert that to calculate the 3.5% rate on amounts that also comprise interest credited during that taxable year, as respondents are endeavoring to do, results in interest on interest, or compound interest, and thus is an effective interest rate in excess of 3.5%. This, petitioners argue, violates the statutory mandate of an annual interest rate not to exceed 3.5%. Respondents on the other hand, urge that the statutory scheme requiring the rate of tax to be applied to "the interest or dividends credited * * * to depositors or shareholders during the taxable year" means the amount "which would have been credited if it had been computed and credited at the rate of three and one-half per cent per annum, whichever is less" based upon the amount *actually credited.* Illustrative of the differing methods of computation is the following example:

| | A | B | C |
|---|---|---|---|
| | .5% stated interest rate | .12% stated interest rate | .18% stated interest rate |
| 1/1/74 deposit | $ 10,000 | $ 10,000 | $ 10,000 |
| 6/30/74 interest | $ 250 | $ 600 | $ 900 |
| 12/31/74 interest | $ 256.25 | $ 636 | $ 981 |
| total interest | $ 506.25 | $ 1,236 | $ 1,881 |

1) Tax if interest computed and credited at 3.5% per annum as prescribed by statute:

$10,000 × 3.5% = $350

$ 350 × .01716 = $6.01

2) Bank's method of computation:

| Total Interest | | Fractional Multiplier | Tax Base | | Tax Rate | | Tax |
|---|---|---|---|---|---|---|---|
| A. $506.25 | × | $\dfrac{3.5\%}{5.0625\% \text{ (effective interest rate)}}$ = | $350 | × | .01716 | = | $6.01 |
| B. $1,236 | × | $\dfrac{3.5\%}{12.36\% \text{ (effective interest rate)}}$ = | $350 | × | .01716 | = | $6.01 |
| C. $1,881 | × | $\dfrac{3.5\%}{18.81\% \text{ (effective interest rate)}}$ = | $350 | × | .01716 | = | $6.01 |

3) City's method at computation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| A. $506.25 | × | $\dfrac{3.5\%}{5\% \text{ (stated interest rate)}}$ | = | $354.38 | × | .01716 | = | $6.08 |
| B. $1,236 | × | $\dfrac{3.5\%}{12\% \text{ (stated interest rate)}}$ | = | $360.50 | × | .01716 | = | $6.19 |
| C. $1,881 | × | $\dfrac{3.5\%}{18\% \text{ (stated interest rate)}}$ | = | $365.75 | × | .01716 | = | $6.28 |

An examination of respondent's method of calculating the tax reveals that the amounts produced under the city's calculations result in a figure which is higher than that which would be produced if deposits were earning the statute's contemplated simple annual rate of 3.5%. Moreover, respondents' scheme causes the tax to vary for each interest rate. This would have the anomalous effect of taxing savings banks having the same deposit liability differently from each other whenever their stated rates of interest, or the frequency of compounding, are at variance. Thus, the 3.5% yearly rate would not constitute a statutory maximum at all but would fluctuate in relation to a particular bank's internal policies and procedures. There is, however, nothing in the wording of the statute which supports disparate treatment of similarly situated financial institutions. The relevant provision merely refers to "the interest or dividend actually credited" or, alternatively, "the interest or dividend which would have been credited if it had been computed and credited at the rate of three and one-half per cent per annum". The statute does not authorize the tax rate to be applied as though the accrued interest was credited at the end of the year. At any rate, the Court of Appeals has held that a statute which levies a tax is to be construed most strongly against the

government and in favor of the taxpayer. (*Matter of Mobil Oil Corp. v Finance Administrator of City of N. Y.,* 58 NY2d 95.)

It is irrelevant that respondents may have in the past interpreted the provision at issue here in the same manner as they are doing now. According to the Court of Appeals, where "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight." (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459.) Further, when an interest rate is, as in the instant situation, expressed as a per cent per annum, it should be understood as indicating a simple annual rate rather than one that is compounded. (See *Giventer v Arnow,* 37 NY2d 305.)

Consequently, in the article 78 proceeding transferred to this court by order of the Supreme Court, New York County (Arnold G. Fraiman, J.), entered on December 22, 1982, seeking to review and annul the determination of respondents assessing certain tax deficiencies against petitioner the American Savings Bank, the petition should be granted, the tax assessments annulled, on the law, and the matter remanded for recomputation, without costs or disbursements.

In the article 78 proceeding, transferred to this court by order of the Supreme Court, New York County (Edward H. Lehner, J.), entered on October 11, 1983, seeking to review and annul the determination of respondents assessing certain tax deficiencies against petitioner the Bowery Savings Bank, the petition should be granted, the tax assessments annulled, on the law, and the matter remanded for recomputation, without costs or disbursements.

KASSAL, J. (dissenting). The issue in these proceedings, transferred pursuant to CPLR 7804 (subd [g]), concerns the proper method for computing the city's financial corporation tax for these petitioners in accordance with the alternative minimum tax, imposed by the Administrative Code

of the City of New York for the years 1973 (§ R46-37.5, subd [b], par [2]), 1974 (§ R46-37.51, subd [b], par [2]) and 1975 (§ R46-37.53, subd [b], par [2]). The alternative minimum tax for savings banks and loan associations for the tax year 1973 was contained in section R46-37.5 (subd [b], par [2]) of the Administrative Code: "For a savings bank and savings and loan association, one and forty-three one-hundredths per cent of the *interest or dividends credited* by it to depositors or shareholders during the taxable year, provided that, in determining such amount, each interest or dividend credit to a depositor or shareholder shall be deemed to be the *interest or dividend actually credited or the interest or dividend which would have been credited* if it had been computed and credited at the rate of three and one-half per cent per annum, whichever is less." (Emphasis added.) In 1974 and 1975, the code contained identical provisions with the exception of an increase in the tax rate from .0143 to .01716 in 1974 and to .02574 in 1975. The provision was modeled after a similar State franchise tax imposed by section 1455 (subd [b], par [2]) of the Tax Law.

Petitioner Bowery Savings Bank is a mutual savings bank, organized under the Banking Law. Petitioner American Savings Bank had formerly been known as Franklin Savings Bank of New York during the period involved here and, in 1981, merged with two other banks, adopting the name, American Savings Bank. Of the 87 banks which had filed returns, about 47 computed the tax by use of the alternative minimum tax basis. Petitioners are two of three banks who have not agreed to adopt the city's method of computing the tax. The central question in these proceedings is whether the provision in the code for a minimum tax at the annual rate of 3.5% means simple interest, as argued by petitioners or, as contended by respondents, requires that the tax be computed by taking into account the compounding practices of the bank so as to apply the 3.5% minimum tax rate to interest credited during the taxable year.

In our view, the Administrative Code does not specify that the interest rate is to be applied as simple interest but, to the contrary, directs that the minimum rate be applicable to "each interest or dividend credit to a depositor or

shareholder", thus requiring that the 3.5% rate be applied to interest generated by the bank's compounding or crediting practices. This is the key language in the code provision, overlooked by the majority here, which has judicially legislated to include within the code an interpretation and direction that 3.5% per annum means simple interest. The code, however, does not so provide and is to the contrary, directing that the minimum tax rate apply to "each interest or dividend credit to a depositor or shareholder". This means moneys actually credited as interest.

The position assumed by petitioners, adopted by the majority, overlooks the critical distinction between principal and interest in that, when an interest or dividend payment is credited to an account, it becomes principal, which is the equity of each depositor or shareholder and upon which the tax is to be computed. To illustrate, in lieu of interest being credited to each account, if the amount of such interest or dividend payment were sent to each depositor or shareholder and, thereafter, deposited by that individual in the same account, clearly, the balance, including the added deposit of the interest or dividend, would be subject to the alternative minimum tax. Similarly, if each interest or dividend credited to the account were withdrawn and simultaneously redeposited in another bank, these amounts would be subject to the minimum tax. On that basis, it would be illogical to exclude those interest or dividend credits from the computation of the alternative minimum tax, particularly in view of the clear language of the code requiring that the stated rate apply to "each interest or dividend credit to a depositor or shareholder", either "actually credited" or "which would have been credited".

We find no merit in the argument advanced by petitioner that the method of computing the tax adopted by the city would lead to inconsistent results in taxing several banks differently, depending upon the frequency of compounding and crediting practices employed by the respective banks. By this argument, petitioners suggest that the city's method would result in a higher tax on the same amount of initial deposit depending upon the frequency of the compounding practice followed by the bank. This may be the

case, however, based upon the language contained in the Administrative Code. Nor is it inherently unfair to impose a higher tax on such banks which follow a more frequent compounding practice, contrary to the position adopted by the majority. As a practical matter, banks which compound interest quarterly or more frequently do enjoy a competitive business advantage over those which only credit interest semiannually. Banks which compound interest daily might appropriately be preferred by depositors to those crediting interest on a lesser basis. Thus, with that in mind, it is not unreasonable to require those banks, which because of their enhanced business position, as a result of their compounding practices, to bear a greater tax burden than those in a less advantageous, competitive business posture.

*Giventer v Arnow* (37 NY2d 305) relied upon by the majority, is inapposite here. In that case, defendants had executed a promissory note agreeing to repay a loan within one year, at an interest rate at 7½% per annum compounded quarterly. In holding the note to be void and uncollectible, the court concluded that the agreement to compound interest was a computation device to increase interest so that, on maturity, there was resulting an actual usurious rate of 7.72% (General Obligations Law, § 5-511, subd 1). The strong public policy considerations relating to the usury statute, which were at issue in that case, have no bearing upon the question posed in these proceedings. Contrary to petitioners' argument, the Court of Appeals in *Giventer* did not hold that, in every case, interest expressed as a certain per cent per annum refers to a simple annual rate. Usury considerations are not at issue here.

Contrary to the finding by the majority, had the drafters of the Administrative Code intended to provide for computation of the tax based upon a simple annual rate, they would have clearly and simply so provided. The designation in the code of the rate for the computation of the alternative minimum tax at 3.5% per annum does not necessarily compel the determination that the stated rate is a simple interest rate. Such construction fails to give effect to the balance of the code provision which imposes the tax on interest or dividends credited "during the tax-

able year" and, in fixing the alternative minimum tax, requires that the amount be determined upon the basis of "each interest or dividend credit to a depositor or shareholder". On that basis, the code necessarily requires that, in computing the tax, the compounding or crediting practice, followed by the bank must be taken into account.

Accordingly, we disagree with the contrary conclusion reached by the majority, and we would confirm the final determination rendered as against each petitioner assessing a tax deficiency for each of the tax years in question.

KUPFERMAN, J. P., and SULLIVAN, J., concur with MILONAS, J.; BLOOM and KASSAL, JJ., dissent in an opinion by KASSAL, J.

Applications granted and the determinations of respondents dated June 30, 1982 and March 10, 1983, respectively, are annulled, on the law, and the matters remanded for recomputation, without costs and without disbursements.